Bradbury, J.
The prosecuting attorney, on the trial of the cause in the court of common pleas, excepted to two rulings of the court. By the first exception he seeks to obtain a construction of section 7287, Revised Statutes, which reads:
“Sec. 7287. In all criminal cases the clerk, upon a precipe being filed, shall issue writs of subpoena for all witnesses named therein, directed to the. sheriff of his county, or of any county' where the witnesses reside or are found, which shall be served and returned as in other cases; and the sheriff, by writing indorsed on the writs, may depute any disinterested person to serve and return the same; provided, that the number of .witnesses, who are expected to testify upon the subject of character or reputation, for which subpoenas may be issued, shall be designated upon the precipe, and shall not exceed ten upon each side, unless a deposit shall first be made with the clerk of at least one per diem and mileage fee for each additional witness, except in the case of murder in the first or second degree, manslaughter, rape, assault with intent to commit rape, or selling intoxicating liquors to a person in the habit of becoming intoxicated. No witness in addition to the number of ten upon each side shall be permitted to testify upon the question of character or reputation, in any criminal case with the exceptions aforesaid, unless his full per diem and mileage fee has been deposited as aforesaid, or paid by the party in whose behalf he is sworn, and the clerk shall not issue a certificate for compensation to be paid out of the county treasury to any witness in - addition to the number of ten, who has testified upon the subject of character or reputation, except as aforesaid.”
On the trial of the cause, as appears from the bill of exceptions taken by the prosecuting attorney, the state had introduced its testimony and rested; and the defendant in the course of introducing his testimonj’', after examining thir *278 teen witnesses, who testified only respecting his character and reputation for peace and quietness, called another witness, and was proceeding to examine him upon the same subject, when the state interposed an objection upon the ground that there had been already examined more than ten witnesses who had testified upon that subject only, and no money had been deposited, as required by the section just quoted, to pay the fees of the witness being examined; the objection was overruled, and the witness was examined and testified touching the character and reputation of the defendant for peace and quietness, and on no other subject; to which ruling of the court the prosecuting attorney excepted, and this action of the court being embodied in a bill of exceptions, pursuant to the statute providing for the same, we are called upon to review it.
The legislative objects sought to be accomplished by the section under consideration, are, evidently, to prevent the squandering of the public revenue and a waste of the time of the courts to the delay of other business. These are appropriate subjects of legislation, and the legislative discretion relating thereto cannot be controlled by the judicial tribunals of the state, unless, where, in some particular instance of its exercise the legislature transcends its constitutional powers, as it is claimed to have done in the present instance.
Section 10 of article I, of the Constitution of 1851, provides that, in prosecutions for ofFences of the kind the defendant was charged with committing, the accused shall “have compulsory process to procure the attendance of witnesses in his behalf” * *. And it is contended that the defendant’s rights in this particular cannot be limited, even by the legislature. This extreme view we do not think can be maintained. The constitution should not receive a construction that would place in the hands of the accused persons an unlimited power to create expense and prolong trials indefinitely; nor, on the other hand, can a power be conceded to the legislature or the courts to unreasonably limit the witnesses an accused person may subpoena to maintain his defense. To concede such authority would be to con *279 cede a power, the exercise of which might substantially defeat the constitutional guaranty alluded to. The true rule, we think, will allow to the legislature the power to prescribe reasonable limits to this right, to have, at the public expense, witnesses to maintain'his defence.
The legislature having the power to confine, within reasonable limits, the rights of an accused person in this respect, an act regulating the subject should not be declared unconstitutional unless clearly unreasonable in its restrictions; which cannot be fairly said of the section under consideration. It allows to the defendant, at public expense, ten witnesses to establish his character, or reputation; a reasonable number it would seem; but if he desires more, it does not deny them, if they are produced at his own expense. It does not follow, however, that because the legislature has power to place a reasonable limitation upon the number of witnesses a defendant may be allowed to examine to any one fact, that, in the case under consideration, it was error in the court'to refuse to comply with the statute.
The evident purpose of the statute is to prevent an abuse of the privilege of compulsory process, secured by the constitution, to procure the attendance of witnesses in their behalf. The command of the statute in this respect is that “No witness in addition to the number of ten upon each side shall be permitted to testify * * * * unless his full per diem and mileage fee has been deposited * * * or paid by the party.” If the accused is able and willing to pay for additional witnesses to his character or reputation the statute does not deny them. The burden of paying for them is regarded as a sufficient guaranty that none not reasonably necessary will be subpoenaed. In other instances where the accused is not able, or not willing, to pay the fees of those in excess of the statutory number, the section under consideration should be regarded as clothing the court with power, if it did not possess such power before, to prevent that abuse of the privilege of compulsory process' which, as is well known, prevails at times throughout the state.
*280 The statute only excludes the witness if his fees are not secured or paid, and we are not disposed to hold that the admission of evidence, regular and lawful if the party producing it has paid or secured the fees of the witness testifying, should be regarded erroneous if his fees are not paid or secured, when such intent is not clearly discernable upon the face of the statute. The court may violate the express provisions of the statute, and the statute may be designed to effect a wise public purpose; but there is a wide distinction between the refusal of a court to execute, in the course of a trial, the provisions of such a statute, and an error of law affecting the rights of the parties as between themselves; and it is only respecting questions of the latter character that this court may review the actions of the other courts of the state. In other respects they are not answerable to this court for their conduct, but to their own conscience and sense of duty.
2. After the testimony was all in the prosecuting attorney requested the court to instruct the jury as follows:
“If you should find from the evidence in this case that, at the time and place' mentioned in this indictment, the defendant, Alfred Stout, unlawfully assaulted William R. Tatman, with intent to kill him, your verdict should be that you find him guilty as charged in the indictment; and this, is so even though the evidence would not support a verdict of guilty of a higher grade of offence than manslaughter against the defendant, Alfred Stout, if his said assault had resulted in the death of the said William R. Tatman.
“To authorize a verdict of guilty of an unlawful assault with intent to kill, upon an indictment found under section 6821, of the Revised Statutes of Ohio, it is not required that the evidence should be such as would authorize a verdict of guilty of murder in the first degree, or murder in the second degree, if death had resulted to the party assaulted through and by reason of the unlawful assault; it will be sufficient if the evidence should show that, in the event of his death, the offence would only be manslaughter.”
The court refused to give to the jury the propositions of *281 law requested, and, instead, gave in charge to them the converse proposition as follows':
“If you should find from-the evidence that had death resulted from the assault, the killing would have been manslaughter only, then you should' find him, the defendant, guilty of assault and battery only and not guilty of assault with intent to kill. But if you should find that such killing, had death resulted, would have been murder in the first degree or murder in the second degree, then you should find the defendant guilty as charged in the indictment.”
To which refusal to charge, and to the charge as given, the prosecutor excepted.
The form of the charge as requested, and the form adopted by the court in giving the converse proposition, probably had its origin’ in the charge given by that eminent .jurist, Judge Timothy Walker, in 1842, while presiding at the trial, in Hamilton county, of certain persons for assault with intent to murder. It was strictly applicable to the evidence in that case, and is a model of brevity and clearness, as a quotation from it of all thatpertains to this subject shows: “You will inquire whether there was an assault with intent to murder. An assault is an attempt or offer, with force and violence, to do some corporal hurt to another. If the attempt or offer be carried into effect, there is more than an assault; there is battery also, and the only question is as to the intent. Was it to commit murder? In other words, if Marsh had been killed, would the prisoners be guilty of murder? If they were attempting to commit a burglary, it would have been murder in the first degree. If not, and they had yet killed him maliciously, it would have been murder in the second degree. Either will satisfy the statute. ' But if you think the killing would have been manslaughter only, you cannot convict. And this must be the case, if you believe, either that there was no intention to kill, or, if an intention, that it was the effect of passions, roused in a sudden quarrel, and that there was no malice, that is, no culpable disregard of another’s rights * * Ohio v. Shields and Robinson, 1 Western Law Journal, 118.
*282 Tbis form, so well adapted to the facts of that case, and so appropriate to the simple and concise sentences of that-master of pure English, may, and often does, especially when presented in a special charge, at the close of the general charge, have the effect to obscure the definitions of malice given by the court in its own words, and instead of enlightening the jury, only contributes to their confusion.
The object sought in charging a jury is its enlightenment. To have charged the propositions requested by the state would not have had that effect, if they had been left unexplained, unless the jury knew, in advance, what elements constituted the crime of manslaughter, and also those which distinguished that clegree of homicide from murder in the first or second degree. The court may, rightfully, refuse to give a correct proposition to a jury where it wquld tend to confuse them, or not contribute to their enlightenment, unless amplified and explained.
If the court had adopted the propositions requested by the state, its duty would have been to proceed further and explain to the jury what constituted the crime of manslaughter, and what distinguished it from the higher grades of homicide.
If it was true as a legal proposition that malice, under sec. 6821, Revised Statutes, is not an essential attribute of the crime of assault with intent to kill, then as matter of course one may be convicted therefor, although, if his victim had died, he would only have been guilty of manslaughter; but this would be so, only, because malice is not an essential ingredient of either offence. The only proper office, therefore, that the propositions requested and refused could have served, was to tell the jury, in an indirect and obscure way, that the state was not bound to prove malice in order to obtain a verdict of guilty of an assault with intent to kill; information that might be given directly and concisely without burdening the minds of the jury with distinctions respecting the several grades of homicide.
Further, if this proposition contained a correct exposition of the law, the court was not bound to give it to the jury in the form requested, but had a right to select for itself *283 the language with which it should be clothed. A judge is not bound to adopt the language of counsel, but may choose his own words and form of arrangement, so that the proposition, if correct and applicable, is fairly presented to the jury. McHugh v. The State, 42 Ohio St. 154.
It was not error, therefore, in the court refusing to adopt the propositions in the form in which they were presented. The main contention, however, is over their correctness as legal propositions.
The contention of the prosecuting attorney is, and he sought, by the proposition requested and rejected, to have the jury instructed that malice is not made an essential ingredient of the crime of assault with intent to kill, by section 6821, Revised Statutes, which creates the offence. That section, in so far as it affects this crime, reads, “Section 6821. Whoever assaults another with intent to kill * * * * shall be imprisoned.” * * * The section does not contain the word malice, nor any equivalent word or phrase. If the section had been originally enacted in that form, a doubtful question- might have arisen whether the legislature intended malice to be essential to the commission of the crime. The terna malice does not necessarily mean ill-will or hatred toward the victim. Revel v. State, 26 Ga., 275; State v. Decklotts, 19 Iowa, 447; State v. Turner, Wright, 20; State v. Gardiner, Wright, 392. It is defined by different courts and authors in varying forms of words, but in substance, with nearly uniform results. Bou-vier gives the results of the authors as follows: “The doing a wrongful act intentionally, without just cause or excuse.” “That state of mind which prompts a conscious violation of the law to the prejudice of another,” 2 Bouv., 139. Keeping steadily in mind a correct notion of what constitutes malice, it may well be doubted, that the section, even if an original act, should receive the construction urged by the state. If the “intent to kill,” under all the circumstances of the transaction, was justifiable and lawful, for example, if in lawful self-defence, the legislature could not be held, reasonably, to intend to .declare it an offence. It is only where the intent to kill was unlawful and wrongful *284 that it should be held to constitute a crime, and to assault another to kill him wrongfully and unlawfully, makes the act malicious.
But, however this may he, the law as originally enacted, employed the word “murder,” instead of the word “kill.” The act reading, “That if any person shall assault another with intent to commit a murder” * * * Section 17, S. & C. (S. & S., 262). When the statutes of the state were revised, under and pursuant to the act of March 27, 1875, (72 Ohio E-, 87,) the commissioners adopted the word “kill” in the place of “murder,” in describing the offense under consideration.
Malice is a necessary ingredient of either grade of murder under the statutes of this state; and therefore an assault with intent to commit “murder” necessarily involved malice. If the legislature itself had amended the section in that particular only by deliberately discarding the word murder and substituting for it the word kill, the inference might have been irresistable, that their purpose was to eliminate the element of malice from the offence; for as it could produce no other effect, that must be held to have been intended, or the amendment would have produced no result whatever. It was not the province, however, of the commissioners to amend the statutes so as to change their meaning, but to reduce them into a concise and comprehensive • form. Changes of phraseology, therefore, thus introduced, do not carry the weight to which they would be entitled had it been the direct act of the legislature itself. We are of opinion, therefore, that notwithstanding the substitution of the word kill for that of murder in the statute, in the revision, no alteration in the meaning of the statute was intended, and therefore, the ingredient of malice is still essential to the offense of an assault with intent to kill.

The exceptions are overruled.